IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Crim. No. 17-27-LPS |
| | : | |
| FATOU SMALL, | : | |
| Defendant. | : | |

## MEMORANDUM ORDER

At Wilmington this **2nd** day of **May, 2018**, having considered Defendant Fatou Small's ("Defendant" or "Small") Motion to Suppress Evidence (D.I. 25), **IT IS HEREBY ORDERED** that Small's motion (D.I. 25) is **DENIED**.[1]

1. Small is charged with possession of a firearm by a person prohibited and possession with intent to distribute a controlled substance. (*See* D.I. 10) On March 7, 2017, Small, a probationer, was pulled over by three then-members of the Dover Safe Streets Task Force: Dover Police Officers Boesenberg ("Officer Boesenberg") and Richey ("Officer Richey") and Delaware Probation and Parole Officer Porter ("Officer Porter"). (*See* D.I. 28 at 2-3; *see also* D.I. 42 ("Tr.") at 19-27) Two of the officers, Boesenberg and Porter, had a limited history with Small, having conducted unsuccessful curfew checks at Small's residence over the previous year. (*See* D.I. 28 at 2-3 (detailing Boesenberg and Porter's involvement in two failed curfew checks at Small's residence on May 16 and September 8, 2016); D.I. 51 at 2-3 (same); *see also*

---

[1] The Court's decision is based on its findings of fact and conclusions of law, which are set out in this Memorandum Order. *See* Fed. R. Crim. P. 12(d).

Tr. at 17-18, 71-73) During one curfew check, Officer Porter saw a black Lincoln Town Car in the driveway of Small's residence at 805 Bacon Avenue, which Officer Porter later determined belonged to Small. (*See* D.I. 51 at 3; Tr. at 71-73) After the second missed curfew check on September 8, 2016, through to the traffic stop on March 7, 2017, Officers Boesenberg and Porter received information from a confidential informant that Small was obtaining and selling drugs using the Town Car. (*See* Tr. at 18-19, 74-75) Officer Porter testified that, based on that information and his prior experience, he developed a plan to try to confront Small somewhere away from his residence. (*See id.* at 99-100)

2. Around 4:15 PM on the day of the stop, Officers Boesenberg, Porter, and Richey were on routine patrol near Bacon Avenue. (*See id.* at 19-20, 29, 78) While driving on Bacon Avenue, the officers noticed the Town Car in the driveway of Small's residence, with its engine running and a passenger in the front seat. (*See id.*) Upon seeing the Town Car running in Small's driveway, Officer Boesenberg, who was driving the unmarked patrol car, turned right onto Nimitz Road to wait to see if the Town Car would leave. (*See id.* at 22-23, 79) When the Town Car did, the officers drove past the Town Car in the opposite direction on Nimitz Avenue at approximately 15-20 miles per hour. (*See id.* at 23-24, 79-80) A mobile video recorder captured the event. (*See id.* at 28) Both Officer Boesenberg and Officer Porter, who was sitting in the front seat of the patrol car, testified that as they approached the Town Car, they were looking to see if Small was driving. (*See id.* at 23-24, 99-100) The plan, Officer Porter explained, was to stop Defendant as soon as they "positively identified him." (*Id.* at 100)

3. Officer Boesenberg testified that as the two cars passed each other, he observed – and stated to Officers Porter and Richey – that the Town Car's windshield was cracked. (*See id.*

2

at 24-25) Officers Porter and Richey "advised [him] verbally" of the same. (*Id.* at 25) Officer Boesenberg further testified that he recognized Small as the driver – and, having observed the crack and identified Small, he turned the patrol car around to pursue the Town Car. (*See id.* at 25-26) Officer Boesenberg testified that while this was going on, the officers were having a conversation about Small's identity as the driver. (*See id.*) Similarly, Officer Porter testified that upon passing the Town Car, he saw the car's "broken" windshield and recognized Small as the driver. (*See id.* at 79-80) Officer Porter also testified that everyone in the patrol car – immediately and almost simultaneously – said aloud to each other, "[T]hat's Fatou Small driving, and . . . all agreed that is a broken windshield. That is a traffic stop." (*Id.* at 80-81; *see also id.* at 96 ("[I]t was so simultaneous that everyone I think just stated aloud there is a cracked windshield.")) After passing the Town Car, Officer Boesenberg turned the patrol car around, activated the patrol car's take down lights, and pulled over the Town Car. (*See id.* at 51) That same day, Officer Boesenberg wrote a report documenting his history with Small and the details of the stop. (*See* D.I. 28 Ex. B) The report states Officers Boesenberg and Porter "observed [Small] driving" the Town Car, and "[a]ll officers observed the front windshield to be severely cracked." (*Id.* at SMALL-RPT-00000009) The following morning, Officer Porter filed a report detailing the stop. (*See* D.I. 28 Ex. A) Officer Porter wrote that he, Officer Boesenberg, and Officer Richey "all observed and discussed the vehicle having a severely broken windshield as it drove past [the officers' vehicle] on Nimitz Road." (*Id.* at SMALL-RPT-00000002) Based on information obtained during the stop, Officer Porter obtained an administrative search warrant for 805 Bacon Avenue, which resulted in the seizure of various evidence. (*See* D.I. 28 at 5)

4. Small moves to suppress the evidence obtained from his person, car, and

3

residence, as well as statements he made to law enforcement, as all being the fruit of an allegedly illegal traffic stop. (*See* D.I. 25) The Court held an evidentiary hearing on January 3, 2018. (*See* Tr.) The motion, including post-hearing briefing, is fully briefed. (*See* D.I. 28, 31, 48, 49, 51, 52) Defendant submitted a DVD containing photos on May 1, 2018. (D.I. 53)

5. The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment permits a traffic stop based on reasonable suspicion that a traffic violation has occurred regardless of the officer's subjective motivations for making the stop." *United States v. Byrd*, 679 F. App'x 146, 149 (3d Cir. 2017), *cert. granted*, 138 S. Ct. 54 (2017); Petition for a Writ of Certiorari at i, Byrd v. United States, 138 S. Ct. 54 (2017) (mem.) (No. 16-1371), 2017 WL 2130318, at *i (listing question presented as, "Does a driver have a reasonable expectation of privacy in a rental car when he has the renter's permission to drive the car but is not listed as an authorized driver on the rental agreement?"); *see also United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006) (explaining "officer need not be factually accurate in her belief that a traffic law had been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place"). "Reasonable, articulable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.'" *Delfin-Colina*, 464 F.3d at 396 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). Instead, "only a 'minimal level of objective justification'" is required for the stop to be lawful. *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). However, the police bear "the initial burden of providing the 'specific, articulable facts' to justify a reasonable suspicion to believe that an individual has violated the traffic laws." *Id.*

4

6. The Court is persuaded that the government has satisfied its burden to show that the officers possessed specific, articulable facts to justify a belief that Small was violating a traffic law at the time of the stop. (*See generally* D.I. 49 at 6-7) (Defendant acknowledging "if the record supports a conclusion that the government has proven by a preponderance of the evidence that the hairline crack in the Town Car's windshield was observable by the officers before the vehicle stop, then the stop of Mr. Small's car passes constitutional muster") Defendant does not dispute that his windshield was cracked, or that driving with a cracked windshield is a violation of the Delaware traffic code. (*See* D.I. 28 at 8-9; D.I. 52 at 3; *see also* 21 Del. C. §§ 4312–13; Tr. at 26 ("Q. What is significant about a cracked windshield in your experience? A. [Boesenberg] It's a motor vehicle violation, a violation of Title 21, the Motor Vehicle Code. Q. Which sections of Title 21? A. 4312, 4313 covers safety glass.")) Small argues instead that the dash-cam footage and photographs taken of his windshield after his arrest prove the officers could not have seen the windshield crack as they drove past the Town Car. (*See* D.I. 25 at 2; D.I. at 49 at 2 (arguing resolution of this motion is "factually driven"))

7. The Court disagrees. Both Officers Boesenberg and Porter testified credibly that they saw the crack in Defendant's windshield before initiating the traffic stop.[2] (*See* Tr. at 24-26, 80-81) While the dash-cam footage does not clearly show the crack in the windshield, the Court

---

[2]Notwithstanding any minor inconsistency in Officer Porter's testimony about when he first saw the crack in Defendant's windshield on the day of the stop (either when the Town Car first turned onto Nimitz Avenue, or upon passing the Town Car – events which happened within seconds of one another), Officer Porter was unequivocal in his testimony that he – and all the other officers in the patrol car – saw the crack, and saw it in the seconds before Officer Boesenberg turned the patrol car around to pursue Defendant's vehicle. (*See* Tr. at 80-81, 96) In evaluating the witnesses' credibility, the Court has also considered Defendant's emphasis on the apparent location of the sun and where sun glare might have been expected. (*See, e.g.*, D.I. 52 at 2)

accepts the officers' testimony that the dash-cam did not capture everything the officers could see as the two cars passed each other. (*See id.* at 30, 97) Indeed, Officer Boesenberg candidly admitted that the dash-cam footage does not show the crack as he saw it on the day of the stop (*see id.* at 29), and the Court recognizes that there are limitations to what can be captured on photos and dash-cam film, *see United States v. Meran*, 2017 WL 4803927, at *8 (W.D. Pa. Oct. 23, 2017) (accepting officer's "reasonable explanation that there are some limitations [to] what the MVR can capture because of its position in the vehicle, as opposed to what he [wa]s able to see in real time from his vantage point"). For example, while the crack is not readily visible on the dash-cam footage, neither is Small's face, although the officers were able to identify Small as the driver of the Town Car. (*See* Tr. at 29) Similarly, the Town Car was, all agree, black in color, but on certain photos taken by the officers later in the day the vehicle does not appear to be black – rather it appears (to the Court at least) to be blue, seemingly due to the angle and glare of the sun, as well as shadows from surrounding trees, structures, and clouds. (*See* GX3) Thus, it is a reality that the officers could have seen something (like a crack in a windshield) that cannot be discerned in all photographic or video representations of the same (or similar) image. Depending on factors such as angle and light, a hairline fracture in glass (such as here) may or may not be visible in a photo or video footage. (*Compare* D.I. 28 Ex. C at 1 (showing windshield crack) *with id.* at 3 (not showing crack)) In the Court's view, the dash-cam footage and photos here cannot be persuasively argued to *disprove* the officers' testimony.[3] *See Byrd*, 679 F. App'x at

---

[3]This is unlike one of the Superior Court of Delaware cases relied on by Defendant. In *State v. Benson*, No. 1605002486 (Del. Super. Ct. Oct. 25, 2016), the dash-cam footage offered at the evidentiary hearing tended to contradict portions of the relevant testimony, which, as the Court has explained, is not the case here. *See id.* at 3-4. Neither does *State v. Rivers*, No. 1502003222 (Del. Super. Ct. Apr. 21, 2016), discredit Officer Boesenberg's testimony. While

149 ("Because the video does not disprove the officer's assertion, we find no basis to disturb the District Court's factual determination."). Indeed, contrary to Defendant's suggestion, the Court finds the "high quality, color, digital still photographs of the Town Car's windshield," recently submitted by Defendant, make the windshield crack *more* visible than it was in the black and white pictures Defendant initially submitted to the Court.[4] (*Compare* D.I. 53 *with* D.I. 28 Ex. C) Moreover, Officers Boesenberg's and Porter's reports, both written shortly after the stop, are consistent with their testimonies. (*See* D.I. 28 Ex. B at SMALL-RPT-00000009; *id.* Ex. A at SMALL-RPT-00000002) The Court finds that the officers possessed specific, articulable facts to justify a belief that Small was committing a traffic infraction, making the stop lawful.

7. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). Because an objective review of the evidence shows the officers had reasonable suspicion to believe Small had committed a traffic violation, the stop – even if likely to occur in the absence of the officers observing what they believed to be a traffic violation – was lawful. *See id.* ("[A] court should only look to whether specific, articulable facts produced by the officer would support reasonable

---

the court in *State v. Rivers* was "not convinced" by Officer Boesenberg, and found in toto a lack of probable cause, the Court also stated that Officer Boesenberg "certainly possessed a reasonable suspicion that Rivers had committed a crime." *Id.* at 7. Neither case made a finding that Boesenberg lacked credibility.

[4]Defendant indicated in his March 3, 2018 reply brief that he "w[ould] file with the Clerk's Office . . . a DVD containing copies of the actual digital, color, still photographs taken of the Town Car's windshield on the date of Defendant Small's arrest that were produced by the government in discovery," which, Defendant contended – and the Court agrees – "provide a better quality image of the Town Car's windshield than the images of these still photographs that were projected on the screen . . . at the suppression hearing." (D.I. 52 at 2 n.1) The Court received the DVD from Defendant on May 1, 2018. (*See* D.I. 53)

suspicion of a traffic infraction."); *see also United States v. Petersen*, 622 F.3d 196, 201 (3d Cir. 2010) ("[A]ny technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime.") (internal quotation marks and citation omitted).

**IT IS FURTHER ORDERED** that the Court will hold a status teleconference on **Wednesday, May 16, 2018 at 1:45 p.m.** Counsel for the government shall initiate the call. The time between now and May 16 is excluded from the speedy trial act calculations and is in the interests of justice.

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE